**Certiorari Granted, March 1, 2010, No. 32,065**

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2010-NMCA-024**

**Filing Date: October 26, 2009**

**Docket No. 28,720**

**DONALD ROMERO and**
**THERESA ROMERO,**

     **Plaintiffs-Appellees,**

**v.**

**PROGRESSIVE NORTHWESTERN**
**INSURANCE COMPANY,**

     **Defendant-Appellant.**

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY**
**James A. Hall, District Judge**

O'Friel and Levy, P.C.
Daniel J. O'Friel
Pierre Levy
Santa Fe, NM

Berardinelli Law Firm
David J. Berardinelli
Santa Fe, NM

for Appellees

Simone, Roberts & Weiss, P.A.
Meena H. Allen
Albuquerque, NM

for Appellant

**OPINION**

1

**VANZI, Judge.**

**{1}** Progressive Northwestern Insurance Company (Progressive) appeals the district court's grant of summary judgment in favor of the Appellees, Donald Romero and Theresa Romero (the Romeros). Progressive contends that the district court erred when it held that the Romeros' purchase of uninsured motorist coverage in amounts lower than the liability limits of their policy was a rejection of uninsured motorist coverage.

**{2}** The district court concluded that New Mexico law requires insurers to offer uninsured motorist (UM) and/or underinsured motorist (UIM) coverage up to the liability limits in an automobile insurance policy; that the Romeros' selection of a lesser amount of UM/UIM coverage constituted a rejection of UM/UIM coverage equal to the difference between the two types of coverage (UM/UIM and liability); and because Progressive failed to obtain a valid written rejection of that coverage, UM/UIM coverage equal to the liability limits of the Romeros' policy will be read into the policy. We affirm.

**BACKGROUND**

**{3}** The facts of this case are not in dispute. Progressive issued a business automobile insurance policy (the Policy) to Donald Romero as sole proprietor of AllTech Electric. The Policy contained single liability limits of $100,000 each accident and UM/UIM limits of $50,000 per person and $100,000 per accident. The Policy period at issue was from October 18, 2005, through October 18, 2006. Three vehicles were insured under the Policy. The Romeros received a copy of the Policy which contained a standard declarations page listing the amount of liability and UM/UIM coverage. The Policy did not contain a rejection of any amount of UM/UIM coverage.

**{4}** On September 23, 2006, Mr. Romero was involved in an accident caused by the negligence of an uninsured motorist. The Romeros made a demand against the Policy for UM/UIM coverage in the amount of $300,000, which represented UM/UIM coverage at the liability limits of the Policy; that is, $100,000 stacked for each of the three vehicles covered under the Policy. Progressive tendered, and the Romeros accepted, UM coverage of $150,000. This sum represented the undisputed UM benefits due under the Policy, which was $50,000 UM/UIM per person, stacked for the three insured vehicles.

**{5}** The Romeros subsequently brought suit in district court seeking declaratory relief. The Romeros' complaint asked the court to declare that they had not made a written rejection of UM coverage equal to their liability limits and that the maximum total UM coverage limits available to them under the Policy was $300,000 per person. Progressive filed a motion to dismiss the complaint, which was denied by the district court. The parties subsequently filed cross motions for summary judgment.

2

**{6}** The district court granted the Romeros' motion for summary judgment and denied Progressive's motion for summary judgment. Progressive filed a timely appeal of that ruling.

**{7}** In its appeal, Progressive argues that under New Mexico law, it is only required to offer UM/UIM coverage equal to the minimum liability coverage required by law; that the Romeros' choice to purchase UM/UIM coverage in an amount less than the liability limits of the Policy was not a rejection of UM/UIM coverage; and that the declaration page of the Policy provided sufficient information regarding coverage to meet New Mexico's regulatory requirements. Progressive also argues that because an insurance policy is a contract, it should be interpreted under the law of contracts. Finally, Progressive argues that even if it was required to offer UM/UIM coverage up to the liability limits of the Policy, there was no harm because it has already paid benefits to the Romeros in excess of the liability limits of the Policy.

## DISCUSSION

### Standard of Review

**{8}** "Summary judgment is appropriate where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Self v. United Parcel Serv., Inc.*, 1998-NMSC-046, ¶ 6, 126 N.M. 396, 970 P.2d 582. "An appeal from the grant of a motion for summary judgment presents a question of law and is reviewed de novo." *Montgomery v. Lomos Altos, Inc.*, 2007-NMSC-002, ¶ 16, 141 N.M. 21, 150 P.3d 971 (filed 2006). "All reasonable inferences are construed in favor of the non-moving party." *Id.* (internal quotation marks and citation omitted). "The meaning of language used in a statute is a question of law that we review de novo." *Cooper v. Chevron U.S.A., Inc.*, 2002-NMSC-020, ¶ 16, 132 N.M. 382, 49 P.3d 61.

### Analysis

**{9}** UM/UIM insurance coverage in New Mexico is regulated by the uninsured motorist statute contained in NMSA 1978, Section 66-5-301 (1983). Our Supreme Court has interpreted this statute to require insurers to offer UM/UIM coverage to their insureds, and if the insured rejects such coverage, to attach a written rejection of UM/UIM coverage to the policy. *See Romero v. Dairyland Ins. Co.*, 111 N.M. 154, 159, 803 P.2d 243, 248 (1990); *see also Kaiser v. DeCarrera*, 1996-NMSC-050, ¶ 8, 122 N.M. 221, 923 P.2d 588 (holding that rejection must be made a part of the policy). The Court has further stated that where a rejection is not made part of the policy, UM/UIM coverage will be read into the policy. *See Romero*, 111 N.M. at 155, 803 P.2d at 244.

**{10}** This case presents two questions of first impression in New Mexico: (1) whether New Mexico law requires insurers to affirmatively offer UM/UIM coverage equal to the amount of liability coverage in an automobile insurance policy; and (2) whether the purchase of a lesser amount of UM/UIM coverage by an insured constitutes a rejection of UM/UIM

3

coverage.  To answer these questions, we examine the statute, associated regulations, and New Mexico case law.  We address each of Progressive's arguments in turn.

**New Mexico Law Requires That Insurers Offer UM/UIM Coverage up to the Amount of Liability Coverage**

**{11}**　Progressive argues that the following language in New Mexico's UM/UIM statute *requires* the insurer to offer UM/UIM coverage equal to the minimum liability limits set out in NMSA 1978, Section 66-5-215 (1983) and *permits* the insured to request more UM/UIM coverage up to the amount of the insured's liability limits on the policy.

**{12}**　Section 66-5-301(A) provides as follows:

> No motor vehicle or automobile liability policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person and for injury to or destruction of property of others arising out of the ownership, maintenance or use of a motor vehicle shall be delivered or issued for delivery in New Mexico with respect to any motor vehicle registered or principally garaged in New Mexico unless coverage is provided therein or supplemental thereto in minimum limits for bodily injury or death and for injury to or destruction of property as set forth in Section 66-5-215 NMSA 1978 and such higher limits as may be desired by the insured, but up to the limits of liability specified in bodily injury and property damage liability provisions of the insured's policy, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death, and for injury to or destruction of property resulting therefrom, according to the rules and regulations promulgated by, and under provisions filed with and approved by, the superintendent of insurance.

Section 66-5-301(A).

**{13}**　In other words, Progressive argues that it is the insured's responsibility to request additional coverage, not the insurer's responsibility to offer it.  We disagree.

**{14}**　The issue here is one of statutory interpretation.  In interpreting statutory provisions, the guiding principle should be to determine and give effect to the intent of the Legislature. *Hovet v. Allstate Ins. Co.*, 2004-NMSC-010, ¶ 10, 135 N.M. 397, 89 P.3d 69.  In order to determine legislative intent, "we look not only to the language used in the statute, but also to the purpose to be achieved and the wrong to be remedied." *Id.*

**{15}**　Our Supreme Court has given specific guidelines for interpreting the uninsured motorist statute.  The Court has recognized that Section 66-5-301 "embodies a public policy of New Mexico to make uninsured motorist coverage a part of every automobile liability

4

insurance policy issued in this state, with certain limited exceptions. The statute was intended to expand insurance coverage and to protect individual members of the public against the hazard of culpable uninsured motorists." *Romero*, 111 N.M. at 156, 803 P.2d at 245. Furthermore, in order to implement the remedial purpose of the statute, the statute must be liberally interpreted and "language in the statute that provides for an exception to uninsured coverage should be construed strictly to protect the insured." *Id.*

**{16}** Applying these guidelines of statutory interpretation, we read Section 66-5-301(A) to require insurers to offer UM/UIM coverage of not less than the minimum amount statutorily required and up to the level of liability coverage contained within the policy. The language of the statute states that insurers must provide UM coverage in "minimum limits . . . as set forth in Section 66-5-215 NMSA 1978 *and* such higher limits as may be desired by the insured, but up to the limits of . . . liability provisions of the insured's policy." Section 66-5-301(A) (emphasis added). We interpret this provision to place two equally weighted requirements on insurers. First, insurers are required to provide UM/UIM coverage of not less than the minimum statutory requirement. Second, insurers are required to provide UM/UIM coverage up to the limits of the liability coverage contained within a given policy.

**{17}** We hold that the Legislature intended that insureds have the option of purchasing UM/UIM coverage up to the liability limits of the policy. This interpretation of the statute is consistent with our opinion in *State Farm Mut. Auto. Ins. Co. v. Marquez*, where we concluded that "the [L]egislature intended for uninsured motorist coverage to apply in the same amounts and in the same territory as a particular policy provides for liability coverage." 2001-NMCA-053, ¶ 7, 130 N.M. 591, 28 P.3d 1132.

**{18}** Progressive argues that in *Pielhau v. RLI Ins. Co.*, 2008-NMCA-099, 144 N.M. 554, 189 P.3d 687, *cert. quashed*, 2009 -NMCERT- 002, 145 N.M. 705, 204 P.3d 30, this Court interpreted the statute to only require insurers to offer minimum levels of UM/UIM coverage. Therefore, according to Progessive, there is no need to reject coverage that is greater than the minimum levels required. We disagree.

**{19}** In *Pielhau*, this Court declared the New Mexico UM statute to be a minimum liability statute, and as such, the statute requires motorists to maintain at least minimum liability coverage. *Id.* ¶ 12. We further stated that "New Mexico has no requirement that uninsured coverage must equal the policy's coverage for bodily injury and property liability." *Id.* This is true; New Mexico does not have such a requirement. In fact, New Mexico has no absolute requirement that an automobile insurance policy contain any UM/UIM coverage, as evidenced by the fact that the insured is free to waive all UM/UIM coverage, as long as such coverage is properly waived.

**{20}** New Mexico does, however, have a statutory requirement that insurers *offer* UM/UIM coverage to insureds that purchase automobile insurance. The lack of a requirement that a policy contain UM/UIM coverage in a specific amount does not obviate

5

the statute's unambiguous requirement that insurers must offer UM/UIM coverage and that they must offer such coverage at a level equal to the liability limits of the policy. *See* Section 66-5-301.

**{21}** Progressive also urges a different interpretation of the statute based on its view of the legislative history associated with the uninsured motorist statute. We do not find this argument persuasive. New Mexico does not have a state-sponsored system of recording legislative history, and our Supreme Court has long-held that legislative history is not persuasive in determining legislative intent. "It is the policy of New Mexico courts to determine legislative intent primarily from the legislation itself. . . . If the intentions of the Legislature cannot be determined from the actual language of a statute, then we resort to rules of statutory construction, not legislative history." *Regents of Univ. of N.M. v. N.M. Fed'n of Teachers*, 1998-NMSC-020, ¶ 30, 125 N.M. 401, 962 P.2d 1236 (citation omitted).

**{22}** The Legislature's objectives are not met by requiring insureds to be sufficiently aware of their statutory rights to request the additional UM/UIM coverage the statute provides. The only way to ensure that the Legislature's intent is implemented is to require insurers to affirmatively offer such coverage to their insureds. Therefore, we read the statute to require insurers to *offer* UM/UIM coverage up to the level of the liability limits of an automobile insurance policy.

**New Mexico Law Requires Rejection of UM/UIM Coverage**

**{23}** Progressive next argues that the Romeros did not reject UM/UIM coverage when they purchased UM/UIM coverage in an amount less than the liability limits of the Policy. Progressive claims that because the Romeros purchased some UM/UIM coverage, they could not have rejected UM/UIM coverage. Again, we disagree.

**{24}** We have determined above that New Mexico's uninsured motorist statute requires insurers to offer UM/UIM coverage of not less than the minimum amount statutorily required and up to the level of the liability coverage contained within the policy. It logically follows that when an insured purchases UM/UIM coverage either in an amount less than their liability coverage or declines UM/UIM coverage altogether, the insured has rejected some or all of the available UM/UIM coverage. The amount of UM/UIM coverage the insured has rejected is equal to the difference between the amount of UM/UIM coverage purchased, if any, and the amount of liability coverage purchased.

**{25}** This analysis is consistent with the *Romero* Court's assessment that the Legislature intended for the uninsured motorist statute to expand insurance coverage in New Mexico, and in order to meet the Legislature's objective, the statute must be liberally interpreted and strictly construed to protect the insured. *Romero*, 111 N.M. at 156, 803 P.2d at 245. Our Supreme Court went on to state that *any* rejection of UM/UIM coverage must be knowingly and intelligently made. *Id.*

6

**{26}** In the present case, the Policy contained liability limits of $100,000 but UM/UIM limits of only $50,000. Therefore, the Romeros rejected $50,000 of the UM/UIM coverage, which they were entitled to purchase under the statute. The amount rejected is the difference between the liability limits of the Policy and the Romeros' selected UM/UIM coverage.

**New Mexico Requirements for a Valid Rejection of UM/UIM Coverage**

**{27}** Progressive next argues that even if it was required to offer UM/UIM coverage up to the liability limits of the Policy, and the Romeros' purchase of lesser coverage was a rejection, then the declarations page of the Policy provided the Romeros with sufficient information regarding their coverage to meet New Mexico's statutory and regulatory requirements for a valid rejection. We are not persuaded.

**{28}** Section 66-5-301(C) of the UM/UIM statute permits an insured to reject the UM/UIM coverage defined in sub-sections A and B of that statute. In *Romero*, our Supreme Court stated that such a rejection must satisfy the applicable regulations promulgated by the superintendent of insurance. 111 N.M. at 156, 803 P.2d at 245. These regulations include 13.12.3.9 NMAC (11/30/01), which requires that "[t]he rejection of the provisions covering damage caused by an uninsured or unknown motor vehicle as required in writing by the provisions of Section 66-5-301 . . . must be endorsed, attached, stamped or otherwise made a part of the policy of bodily injury and property damage insurance." 13.12.3.9 NMAC.

**{29}** The *Romero* Court further interpreted the regulation to require that the rejection "clearly and unambiguously call to the attention of the insured the fact that such coverage has been waived[,]" and to ensure that the insured has "affirmative evidence of the extent of coverage" sufficient to permit the individual to reconsider rejection at a later date. *Romero*, 111 N.M. at 156, 803 P.2d at 245. "Providing affirmative evidence of the rejection of the coverage comports with a policy that any rejection of the coverage be knowingly and intelligently made. Any individual rejecting such coverage should remain well informed as to that decision." *Id.*

**{30}** We agree with the district court's finding that the Romeros did not make a valid rejection of UM/UIM coverage in accordance with these guidelines. The Policy did not contain any affirmative evidence of the amount of UM/UIM coverage rejected by the Romeros. Nothing in the Policy would clearly and unambiguously call attention to the fact that a portion of the UM/UIM coverage available under the UM statute had been waived.

**{31}** The declarations page of the Policy lists the amount of liability and UM/UIM coverage purchased under the Policy. It does not contain a notification that UM/UIM coverage could be increased to equal the liability limits of the Policy, nor does it contain any indication that the insured has rejected an amount of UM/UIM coverage that they have a statutory right to purchase. Without this information, the declarations page does not meet the objective, defined by the Court in *Romero*, of providing affirmative evidence of rejection

sufficient for the insured to reconsider the decision to reject some or all UM/UIM coverage at a later date and of keeping the insured well informed of that decision.

**{32}** Our Supreme Court has strictly interpreted UM/UIM rejection requirements. In *Romero*, the Court held that "the rejection of uninsured motorist coverage was invalid and ineffective as a matter of law" where (1) the rejection was contained in a signed insurance application but the application was not attached to the policy, (2) the insured was never given a copy of the application containing the rejection, and (3) the policy declarations sheet made no mention of the rejection of UM/UIM coverage. *Romero*, 111 N.M. at 157, 803 P.2d at 246. The Court particularly noted that the declarations page of the policy was insufficient as a rejection because it did not contain "any endorsement, rejection, or exclusion of uninsured motorist coverage." *Id.* at 159, 803 P.2d at 248.

**{33}** Similarly, in *Kaiser*, our Supreme Court held that a rejection of UM/UIM coverage was invalid where the copy of the insurance policy the insured received did not contain a copy of the rejection, even though the insured had knowingly and intentionally signed a rejection of that coverage during the application process. 1996-NMSC-050, ¶¶ 10, 17. The Court reiterated that the purpose of the insurance regulations was to permit people to reconsider their insurance coverage by providing them with "affirmative evidence of the extent of coverage for *future* reference." *Id.* ¶ 10.

**{34}** This Court recently reaffirmed this line of reasoning in *Arias v. Phoenix Indem. Ins. Co.*, 2009-NMCA-100, 147 N.M. 14, 216 P.3d 264, *cert. denied*, 2009-NMCERT-008, ___ N.M. ___, ___ P.3d ___ (No. 31,864, Aug. 20, 2009), where we held that even though the insured signed a rejection of UM/UIM coverage as part of her application for insurance and received a copy of the application at that time, the rejection was still invalid because the application and rejection were not part of the actual insurance policy received by the insured and therefore did not comply with the regulations. *Id.* ¶ 1.

**{35}** In *Marckstadt v. Lockheed Martin Corp.*, 2008-NMCA-138, ¶¶ 21-24, 145 N.M. 90, 194 P.3d 121, *cert. granted*, 2008-NMCERT-010, 145 N.M. 524, 201 P.3d 855, this Court declined to require a signed rejection where "the insured maintains that he or she never doubted whether UM coverage had been rejected." Progressive points to this case for the general proposition that a signed rejection is not necessary to uphold the validity of a rejection of UM/UIM coverage. However, *Marckstadt* did not announce a general principle but was instead a narrow holding, limited to the specific facts of that case. *See id.* ¶ 24 ("We emphasize that our holding today is limited to the facts of this case.").

**{36}** The facts in *Marckstadt* differ significantly from the case at hand. In *Marckstadt*, the person seeking to enforce the UM/UIM coverage was not the insured but a third party. *Id.* ¶ 5. The insured in *Marckstadt* specifically stated that it believed it had validly rejected UM/UIM coverage, *id.*, as opposed to the Romeros, who state that they did not understand they were rejecting UM/UIM coverage up to their liability limits when they accepted the Policy with lower UM/UIM coverage.

**{37}** *Marckstadt* is further distinguished by the fact that, in *Marckstadt*, the insured's copy of the policy contained an endorsement specifically rejecting the questioned UM/UIM coverage, *id.* ¶ 22, whereas in the current case, the Policy does not contain any indication that the UM/UIM coverage was rejected. Finally, in *Marckstadt*, the insurer subsequently obtained a signed rejection of that coverage from the insured and delivered a copy of that rejection to the insured as part of its policy. *Id.* The Court in *Marckstadt* noted that its analysis might have been different if there had been a question about the authenticity of the endorsement or if the insured had not maintained that it had always believed it had rejected UM/UIM coverage under the policy. *Id.* ¶ 24. Based on the significant differences between the two cases, we conclude that the holding in *Marckstadt* does not apply to the present case.

**{38}** Where an insured has not executed a valid rejection of UM/UIM coverage, our Supreme Court has directed that UM/UIM coverage will be read into the policy. *Romero*, 111 N.M. at 157, 803 P.2d at 246. The legislative purpose of the statute is to provide uninsured motorist coverage "in every automobile liability policy unless the insured has knowingly and intelligently waived such coverage." *Id*. at 156-57, 803 P.2d at 245-46. "For that reason uninsured motorist coverage will be read into an insured's liability policy when a rejection of such coverage does not comply with [the] regulations." *Id.* at 157, 803 P.2d at 246. The Court went on to state that this is true "regardless of the intent of the parties or the fact that a premium has not been paid." *Id.* at 155, 803 P.2d at 244.

**{39}** We hold that Progressive did not obtain a valid rejection of UM/UIM coverage from the Romeros; therefore, the district court was correct in reading UM coverage at the liability limits into the Policy.

## Insurance Policies and the Law of Contracts

**{40}** Progressive urges us to apply the law of contracts to the Policy in question and enforce the contract as written. Progressive cites to *Thompson v. Occidental Life Ins. Co.*, 90 N.M. 620, 621, 567 P.2d 62, 63 (Ct. App. 1977), for the proposition that "[a]n insurance policy is a contract and is generally governed by the law of contracts, and the rights and duties of the parties are to be determined by its terms." However, our Supreme Court has stated that language in an automobile insurance policy "is controlling only when not in conflict with public policy, as promulgated by the uninsured motorist statute and applicable regulations." *Romero*, 111 N.M. at 159, 803 P.2d at 248. Using this guidance, the Policy in question cannot be enforced as written because we find Progressive's failure to offer UM/UIM coverage at the Policy's liability limits to be in conflict with public policy as expressed by the UM statute and our Supreme Court's interpretation of that statute.

## Coverage Offered Versus Benefit Paid

**{41}** Finally, Progressive argues that it actually paid more than the $100,000 liability limits of the Policy when it paid stacked UM/UIM coverage of $150,000. We find this

9

argument without merit. The amount of UM/UIM coverage Progressive is required to offer its insureds by Section 66-5-301(A) and the amount of benefits Progressive is required to pay out under the terms of the Policy are separate and distinct requirements.

**{42}** Progressive was required under Section 66-5-301(A) to offer the Romeros UM/UIM up to the level of the liability coverage contained within the Policy—in this case, $100,000. The terms of the Policy permit "stacking" of UM/UIM coverage for each covered vehicle. Stacking results in the amount of UM/UIM coverage being multiplied by the number of vehicles covered under the policy. *See Montano v. Allstate Indem. Co.*, 2004-NMSC-020, ¶ 4, 135 N.M. 681, 92 P.3d 1255. Had the Policy contained UM/UIM coverage equal to the liability limits, the terms of the Policy would have entitled the Romeros to UM/UIM coverage equal to the liability limit of $100,000, stacked for each of the three covered vehicles, resulting in a total UM/UIM benefit of $300,000.

**{43}** Progressive only complied with the terms of the Policy when it stacked the UM/UIM benefit it paid to the Romeros. It did not meet the requirements of Section 66-5-301(A) that it provide UM/UIM coverage up to the liability limits of the Policy.

**CONCLUSION**

**{44}** For the reasons set forth above, we affirm the district court's order granting summary judgment in favor of the Romeros.

**{45}** **IT IS SO ORDERED.**

_____

**LINDA M. VANZI, Judge**

**WE CONCUR:**

_____

**MICHAEL D. BUSTAMANTE, Judge**

_____

**MICHAEL E. VIGIL, Judge**

**Topic Index for *Romero v. Progressive Northwestern Insurance Co.*, No. 28,720**

**AE**          **APPEAL AND ERROR**
AE-SR          Standard of Review

**CP**          **CIVIL PROCEDURE**
CP-SJ          Summary Judgment

**CN**           **CONTRACTS**
CN-IN        Interpretation

**IN**            **INSURANCE**
IN-CV       Coverage
IN-PC       Primary, Secondary or Other Coverage
IN-RI        Regulation of Insurance
IN-UM      Uninsured or Underinsured Motorist

**ST**           **STATUTES**
ST-IP        Interpretation