**Certiorari Granted, April 1, 2010, No. 32,243**

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2010-NMCA-031**

**Filing Date:  January 26, 2010**

**Docket No. 28,859**

**FARMERS INSURANCE COMPANY
OF ARIZONA,**

  **Plaintiff/Counter-Defendant-Appellants,**

**v.**

**XIAN CHEN,**

  **Defendant/Counter-Plaintiff-Appellee.**


**APPEAL FROM THE DISTRICT COURT OF LOS ALAMOS COUNTY
James A. Hall, District Judge**

O'Brien & Ulibarri, P.C.
Daniel J. O'Brien
Albuquerque, NM

for Appellant

Law Office of James A. Branch, Jr.
James A. Branch, Jr.
Albuquerque, NM

Law Office of Brian K. Branch
Brian K. Branch
Albuquerque, NM

for Appellee

**OPINION**

**VANZI, Judge.**

1

**{1}** Farmers Insurance Company of Arizona (Farmers) appeals the district court's grant of summary judgment in favor of Appellee, Xian Chen (Mr. Chen). Farmers contends that the district court erred when it held that the automobile insurance policies issued by Farmers to Mr. Chen and his wife (the Chens) did not comply with New Mexico regulations regarding uninsured motorist (UM) and/or underinsured motorist (UIM) coverage, and therefore, Mr. Chen was entitled to UM/UIM coverage equal to the liability limits on those policies.

**{2}** The district court held that New Mexico law requires insurers to offer UM/UIM coverage up to the liability limits in an automobile insurance policy; that the Chens' selection of a lesser amount of UM/UIM coverage constituted a rejection of UM/UIM coverage equal to the difference between the two types of coverage (UM/UIM and liability); and, because Farmers failed to obtain a valid written rejection of that coverage, UM/UIM coverage equal to the liability limits of the Chens' policies will be read into those policies. We affirm.

**BACKGROUND**

**{3}** The facts in this case are not in dispute. Farmers issued two insurance policies to the Chens. Each policy provided liability coverage of $100,000 for each person, $300,000 for each occurrence and UM/UIM limits of $30,000 for each person, $60,000 for each occurrence. During the application process, Mr. Chen's wife signed two "Uninsured Motorist Election" agreements (election agreements), one for each policy. The election agreements define UM/UIM coverage and state that the opportunity to purchase UM/UIM coverage in an amount up to the automobile limits was previously provided. The election agreements allow the insured to reject UM/UIM coverage entirely or select an amount of coverage less than the liability limits of the policy. The agreements signed by Mr. Chen's wife indicate a selection of UM/UIM coverage in the amount of $30,000 per person, and $60,000 per occurrence. The signed UM/UIM election agreements were not attached to the automobile insurance policies that Farmers issued to the Chens.

**{4}** An endorsement titled "Endorsement Reducing Uninsured Motorist Coverage" and labeled "s1655" was attached to each policy. The declarations page of the policy referenced the s1655 form. The s1655 form is a generic form that states that "the named insured has selected Uninsured Motorist Coverage limits of Liability that are *lower* than the **Bodily Injury** Limit of Liability of this policy." The s1655 form refers insureds to the declarations page of their policy for the liability limits.

**{5}** Mr. Chen's wife was killed and his son was injured by the negligence of an underinsured motorist. Mr. Chen made a demand against his Farmers insurance policies for UM/UIM coverage at the liability limits of his policies, alleging that Farmers had failed to obtain a valid written rejection of UM/UIM coverage. Farmers denied Mr. Chen's claim and

2

asserted it was only responsible for the payment of UM/UIM limits of $30,000 per person on each policy.

**{6}** Farmers argues on appeal that the statute and regulation pertaining to the rejection of UM/UIM coverage do not apply to policies containing UM/UIM limits of at least $25,000, and even if the statute and regulation do apply, the policies Farmers issued to the Chens meet the New Mexico statutory and regulatory requirements for rejection of UM/UIM.

## DISCUSSION

### Standard of Review

**{7}** "Summary judgment is appropriate where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Self v. United Parcel Serv., Inc.*, 1998-NMSC-046, ¶ 6, 126 N.M. 396, 970 P.2d 582. "An appeal from the grant of a motion for summary judgment presents a question of law and is reviewed de novo." *Montgomery v. Lomos Altos, Inc.*, 2007-NMSC-002, ¶ 16, 141 N.M. 21, 150 P.3d 971 (filed 2006). "All reasonable inferences are construed in favor of the non-moving party." *Id.* (internal quotation marks and citation omitted).

### New Mexico Law Requires Rejection of UM/UIM Coverage

**{8}** Farmers argues that the Chens' purchase of UM/UIM coverage in an amount less than the liability limits of their policy was not a rejection of UM/UIM coverage because New Mexico law only requires minimum UM/UIM coverage of $25,000 and optionally permits insureds to request additional UM/UIM coverage up to the liability limits of their policies. Farmers argues that, because the Chens purchased UM/UIM coverage in excess of the minimum required, they did not reject any amount of UM/UIM coverage. We disagree.

**{9}** UM/UIM insurance coverage in New Mexico is regulated by the uninsured motorist statute contained in NMSA 1978, Section 66-5-301 (1983). This statute states, in part, that insurers must provide UM coverage in "minimum limits . . . as set forth in 66-5-215 NMSA 1978 *and* such higher limits as may be desired by the insured, but up to the limits of . . . liability provisions of the insured's policy[.]" Section 66-5-301(A) (emphasis added).

**{10}** In *Romero v. Progressive Northwestern Insurance Co.*, (*Romero I*) 2010-NMCA-024, ¶ 16, ___ N.M. ___, ___P.3d ___, (No. 28,720, Oct. 26, 2009), this Court recently interpreted this section of the statute "to place two equally weighted requirements on insurers. First, insurers are required to provide UM/UIM coverage of not less than the minimum statutory requirement. Second, insurers are required to provide UM/UIM coverage up to the limits of the liability coverage contained within a given policy." *Id.* We further stated that, based on this interpretation, insurers have an affirmative duty to "*offer* UM/UIM coverage up to the level of the liability limits of an automobile insurance policy."

3

*Id.* ¶ 22. We held that, because insurers are statutorily required to offer UM/UIM coverage up to the liability limits of the policy, a purchase of an amount less than the liability limit by the insured is a rejection of the UM/UIM coverage that is statutorily available to the insured. *Id.* ¶ 24.

**{11}**     In the present case, the Chens purchased UM/UIM coverage of $30,000 per person, while purchasing liability coverage of $100,000 per person.  Therefore, the Chens rejected $70,000 of the UM/UIM coverage that they were entitled to purchase under the statute.

**Requirements for a Valid Rejection of UM/UIM Coverage**

**{12}**     Farmers next contends that even if it was required to offer the Chens UM/UIM coverage at the liability limits of the policy and was, therefore, required to obtain a valid rejection of such coverage, when the Chens selected a lesser amount, Farmers has met the UM/UIM regulatory requirements for rejection by informing the Chens of their UM/UIM elections in three separate documents:  the declarations pages of the policies, the s1655 forms, and the election agreements.

**{13}**     Section 66-5-301(C) of the UM/UIM statute permits a policyholder to reject the UM/UIM coverage defined in subsections A and B of that statute.  The specific requirements for such a rejection are defined in regulations promulgated by the superintendent of insurance.  Regulation 13.12.3.9 NMAC (11/30/01), states that "[t]he rejection of the provisions covering damage caused by an uninsured or unknown motor vehicle as required in writing by the provisions of Section 66-5-301 . . . must be endorsed, attached, stamped or otherwise made a part of the policy of bodily injury and property damage insurance."

**{14}**     In *Romero v. Dairyland Insurance Co.* (*Romero II*), our Supreme Court stated that a valid rejection must clearly and unambiguously call to the attention of the insured the fact that UM/UIM coverage has been rejected and ensure that the insured has affirmative evidence of the rejection sufficient to permit the individual to reconsider the rejection at a later date.  111 N.M. 154, 156, 803 P.2d 243, 245 (1990).

**{15}**     Most recently, in *Marckstadt v. Lockheed Martin Corp.*, 2010-NMSC-001, ___ N.M. ___, ____ P.3d ___ (No. 31,258, Nov. 19, 2009), our Supreme Court reviewed and interpreted the regulation and prior court rulings.  In *Marckstadt*, the Court held that an insurer must meet two requirements in order to comply with statutory and regulatory requirements when excluding UM/UIM coverage in an automobile liability policy. *Id.* ¶ 26.

**{16}**     First, the Court held that the insurer must obtain a written rejection of UM/UIM coverage from the insured. *Id.*  The Court stated that, for a rejection to be valid, the insurer must make a meaningful offer of UM/UIM coverage, the insured must knowingly and intelligently act to reject such coverage, and the insured's rejection must be made in writing. *Id.* ¶¶ 16-17.  The Court noted, however, that the written rejection need not be signed or attached to the policy. *Id.* ¶ 26.

**{17}** Second, the Court held that evidence of the rejection must be attached to the insured's policy and that such evidence must be sufficient to "clearly and unambiguously call to the attention of the insured the fact that such coverage has been waived." *Id.* ¶ 25 (internal quotation marks and citation omitted). The Court noted that, while attaching the written rejection itself to the policy would obviously meet the second requirement, "other forms of notification could function equally well" as long as the notification is "made part of the policy by endorsement, attachment, or some other means." *Id.* ¶¶ 25-26.

**{18}** For the purposes of our discussion, we refer to the two requirements defined by the Court as the "written rejection requirement" and the "attached notification requirement," respectively.

**{19}** Before we begin our analysis, we note that in his dissent, the author has attached three pages as exhibits. Exhibits 2 and 3 were part of the multi-paged policies received by the Chens. Exhibit 1 was not a part of those policies. We believe that these pages, taken out of context, present an inaccurate representation of the policies for the purpose of determining whether they meet the requirements defined by the Court in *Markstadt*.

**Written Rejection Requirement**

**{20}** We first address whether the declarations pages, the s1655 forms, and the election agreements, together or individually, meet the written rejection requirement defined in *Markstadt*.

**{21}** In *Markstadt*, the Court stated that for a rejection of UM/UIM to be valid, the insured must knowingly and intelligently reject the coverage. *Id.* ¶ 16. New Mexico courts have not prescribed the specific information an insurer must provide to its insureds to permit the insureds to make a knowing and intelligent rejection; however, we hold that, at a minimum, insureds must be clearly informed as to: the amount of coverage they are entitled to purchase; the amount of coverage they have in fact purchased; and the fact that they have rejected some amount of coverage.

**{22}** Of the three documents in question, no single document contains all the information the Chens would have needed in order to understand what, if any, UM/UIM coverage they had rejected. The election agreements list the amount of UM/UIM coverage purchased by the Chens but do not list the amount of UM/UIM coverage the Chens were permitted to purchase or the amount they had rejected by choosing to purchase less coverage. The declarations pages list both the amount of liability coverage and the amount of UM/UIM coverage purchased by the Chens but do not list the amount of UM/UIM coverage rejected or the amount of UM/UIM coverage available for purchase. The s1655 forms are generic forms that do not state the amount of UM/UIM coverage selected, the amount of UM/UIM coverage rejected, or the amount of UM/UIM coverage available for purchase. Finally, none of the three documents clearly state that the Chens rejected some amount of UM/UIM coverage. Based on these facts, we find that the documents do not meet the written rejection

requirement because they do not provide sufficient information regarding the Chens' UM/UIM coverage to ensure that the Chens knowingly and intelligently rejected that coverage.

**Attached Notification Requirement**

**{23}** We next address whether the documents meet the attached notification requirement defined in *Marckstadt*. We first note that, to meet this requirement, the notification must be attached to the insured's policy. *Marckstadt*, 2010-NMSC-001, ¶ 25. The election agreements were not attached to the copies of the policies received by the Chens; accordingly, we consider only the declarations pages and the s1655 forms for the purposes of determining whether the Chens' policies met the attached notification requirement.

**{24}** In order to meet the requirement, the attached notification must clearly and unambiguously call to the attention of the insured the fact that some amount of UM/UIM coverage has been rejected and provide affirmative evidence of the amount rejected, sufficient to permit the insured to reconsider the rejection at a later date. *Id.* ¶¶ 19, 25; *Romero II*, 111 N.M. at 156, 803 P.2d at 245. As we noted above, neither the declarations pages nor the s1655 forms contain all the information necessary to fully inform the Chens regarding their UM/UIM coverage decisions. Neither document specifically states the amount of UM/UIM coverage rejected by the Chens nor the amount of coverage the Chens were permitted to purchase under New Mexico law. Without this specific information, the Chens were not equipped to understand their selections or to reconsider those selections at a later date. We find, therefore, that these documents do not provide sufficient information regarding the rejection of UM/UIM coverage to meet the attached notification requirement.

**{25}** In *Romero II*, our Supreme Court observed that unless rejection is done in a manner consistent with the requirements imposed by the statute and regulations, UM/UIM coverage will be read into the policy "regardless of the intent of the parties." 111 N.M. at 155, 803 P.2d at 244. The Court further stated that the UM/UIM statute embodies a public policy to make uninsured motorist coverage a part of every automobile liability insurance policy issued in New Mexico, and the statute was intended to expand insurance coverage and to protect individual members of the public against the hazard of culpable uninsured motorists. *Id.* at 156, 803 P.2d at 245. Finally, the Court stated that the statute should be liberally interpreted in order to implement its remedial purpose and that language in the statute that provides for an exception to UM/UIM coverage should be construed strictly to protect the insured. *Id.*

**{26}** In light of this guidance and our analysis as discussed above, we find that the Chens' automobile liability policies do not meet the New Mexico statutory and regulatory requirements for rejection of UM/UIM coverage. Farmers, therefore, did not obtain a valid rejection of UM/UIM coverage from the Chens.

**{27}** Where a valid rejection of UM/UIM coverage has not been obtained by the insurer, New Mexico law requires UM/UIM coverage to be read into the policy at the liability limits, regardless of the intent of the parties or the fact that a premium has not been paid. *Romero II*, 111 N.M. at 155, 803 P.2d at 244. Because Farmers did not obtain a valid rejection of UM/UIM coverage from the Chens, the district court was correct in reading UM coverage at the liability limits into the Chens' policies.

**CONCLUSION**

**{28}** For the reasons set forth above, we affirm the district court's order granting summary judgment in favor of Mr. Chen.

**{29}** **IT IS SO ORDERED.**

_____
**LINDA M. VANZI, Judge**

**I CONCUR:**

_____
**MICHAEL D. BUSTAMANTE, Judge**

**MICHAEL E. VIGIL, Judge (dissenting)**

**VIGIL, Judge (dissenting).**

**{30}** Mr. Chen and his wife (the Insureds) purchased two policies. One was for a 1990 Honda Civic, and one was for a 1996 Mercury Villager. The forms and coverages for both policies are identical. The Insureds purchased bodily injury limits of liability in the amount of $100,000 per person and $300,000 per occurrence, and UM/UIM coverage in the amount of $30,000 per person and $60,000 per occurrence for each automobile. The majority concludes that the Insured's rejection of UM/UIM coverage for the full amounts of the bodily injury coverage was invalid. I disagree and therefore dissent.

**{31}** In *Marckstadt*, our Supreme Court summarizes its holding that pursuant to the statute and regulation,

> the insurer must obtain a written rejection from the insured, but that the written rejection need not be signed or attached to the policy. . . . However, we reiterate our holding in *Romero* [*II*] that 13.12.3.9 NMAC requires that some evidence of the insured's written rejection of UM/UIM coverage must be made part of the policy by endorsement, attachment, or some other means that calls the insured's attention to the fact that such coverage has been waived.

7

*Marckstadt*, 2010-NMSC-001, ¶ 26.  In my view, Farmers complied with both of these requirements.

**{32}**     First, Farmers obtained valid written rejections of UM/UIM coverage for less than the limits of the liability coverages.  When Mr. Chen's wife applied for the insurance, she signed a form entitled, "**UNINSURED MOTORIST ELECTION**" for each policy.  The form is clear and unambiguous in its form and content, and a copy is attached hereto as Exhibit 1.  The "**UNINSURED MOTORIST ELECTION**" signed for each policy specifically states, "I have had the coverage of Uninsured Motorist protection explained to me.  The opportunity to purchase this coverage in an amount up to my automobile limits has been provided."  There is a box to reject uninsured motorist coverage in its entirety and there is a second box whereby the insured selects reduced uninsured motorist coverage.  The second box was checked, indicating "reduced Uninsured Motorist Coverage limits of 30 per person and 60 per occurrence."  No argument has been made that this does not indicate UM/UIM coverage limits of $30,000 per person and $60,00 per occurrence.  The form then provides, "In consideration of the reduction of the premium, the Company and I agree that Uninsured Motorist Coverage shall apply according to the terms selected."  This form satisfies the requirement that the insurer offered UM/UIM coverage up to the level of the liability limits of the policy, and it clearly reflects a rejection of the full amount for a lower amount.

**{33}**     Secondly, the policies that were delivered to the Insureds satisfy the requirement of *Marckstadt* "that some evidence of the insured's written rejection of UM/UIM coverage must be made part of the policy by endorsement, attachment, or some other means that calls the insured's attention to the fact that such coverage has been waived."  *Id.* ¶ 26.  The policies themselves set forth on their respective declarations sheets bodily injury limits of liability of $100,000/$300,000 and uninsured motorist coverage of $30,000/$60,000.  (The declarations sheet clearly states that the coverages entries are in thousands of dollars, and the bodily injury limits of liability are "100 Each Person" and "300 Each Occurrence," and that the uninsured motorist bodily injury limits are "30 Each Person" and "60 Each Occurrence.").  The declarations sheet also clearly states that various endorsements apply, one of which is identified as the s1655 endorsement.  A declarations sheet is attached hereto as Exhibit 2 to show where and how this information was conveyed to the Insureds.  Endorsement s1655 is attached to each policy that was delivered to the Insureds and it too is clear and unambiguous in its content and form.  A copy is attached hereto as Exhibit 3.  The s1655 endorsement is entitled, **"ENDORSEMENT REDUCING UNINSURED MOTORIST COVERAGE"** and states,

> In consideration of the reduced premium, the named insured has selected Uninsured Motorist Coverage Limits of Liability that are *lower* than the **Bodily Injury** Limit of Liability of this policy.  The limit of liability chosen for Uninsured Motorist is shown on the Declarations Page.

Thus, the endorsement clearly calls attention to the fact that the Insureds selected UM/UIM coverage in an amount lower than the bodily injury limit of liability of the policy and that the amount chosen is shown on the declarations page.

**{34}** Finally, I disagree with the majority that the insurance documents must list the actual *amount* of UM/UIM coverage the Insureds were permitted to purchase or the actual *amount* they had rejected by choosing to purchase less coverage. Majority opinion, ¶ 21. Compliance with the statute and regulation has not heretofore required that specific dollar amounts be set forth in the documents. Moreover, the same panel of this Court in *Romero I* said,

> In the present case, the Policy contained liability limits of $100,000 but UM/UIM limits of only $50,000. Therefore, the [Insureds] rejected $50,000 of the UM/UIM coverage, which they were entitled to purchase under the statute. The amount rejected is the difference between the liability limits of the Policy and the [Insureds'] selected UM/UIM coverage.

*Romero I*, 2010-NMCA-024, ¶ 26.

**{35}** Farmers obtained a valid written rejection for full coverage of UM/UIM coverage, and the policy itself adequately calls attention to this fact as required by *Marckstadt*. Since the majority disagrees, I dissent. I would reverse and remand with instructions to enter judgment in favor of Farmers.

_____
**MICHAEL E. VIGIL, Judge**

9