ORDER CERTIFYING STATE LAW QUESTION
ROBERT H. HENRY, Chief Judge.
Weed Warrior Services and Brenda Et-cheverry appeal the district court’s grant of summary judgment in favor of Progressive Northwestern Insurance Company (“Progressive”). At issue is whether the Etcheverrys’ decision to take uninsured/underinsured motorist (UM/UIM) coverage in a lesser amount than the general coverage under a commercial automobile insurance policy constitutes a “rejection” under the New Mexico uninsured *854 motorist statute. The district court ruled that the Etcheverrys’ decision to take UM/ UIM coverage in a lesser amount did not constitute a rejection. This conclusion conflicts with another federal district court opinion and three New Mexico Court of Appeals decisions. Because the disposition of this appeal turns on an important and unsettled question of New Mexico law, we respectfully request the New Mexico Supreme Court to exercise its discretion to accept the following certified question:
Does the election to take UM/UIM coverage for less than the general policy liability limits constitute a rejection under the New Mexico uninsured motorist statute, N.M. Stat. §§ 66-5-301(A)?
The facts relevant to the determination of this certified question are set forth below.

Background

On September 26, 2000, Brenda Etchev-erry suffered injuries in a motor vehicle accident. She settled against the other driver involved for that driver’s policy limit — $100,000. Mrs. Etcheverry then sought additional recovery for her injuries from Progressive Northwestern Insurance Company under a commercial automobile insurance policy taken out by her husband for his company, Weed Warrior Services.[1]
The Etcheverrys’ policy with Progressive had general liability coverage for $1,000,000 and uninsured/underinsured (UM/UIM) motorist coverage for $100,000. Above the signature line on the application, signed by Mr. Etcheverry, were a number of statements, including: “I understand several options of Uninsured/Un-derinsured Motorists Coverage are available and they have been explained to me. The option selected on this application is the option I desire.” Aplt’s App. at 322 (Mem. Op. and Order, filed Dec. 5, 2008, 588 F.Supp.2d 1281).
Progressive filed suit, a diversity action in federal district court, requesting a declaratory judgment that it is not liable to Mrs. Etcheverry under the policy. The district court issued a memorandum opinion and order granting Progressive’s motion for summary judgment and issuing a declaratory judgment in its favor.
Mrs. Etcheverry then obtained new counsel and moved to amend the judgment pursuant to Fed.R.Civ.P. 59(e), arguing that her previous counsel had failed to notify her of Progressive’s declaratory judgment lawsuit. The district court entered an order allowing her to file an amended answer with a counterclaim.
Mrs. Etcheverry then filed a motion for summary judgment on her counterclaim, seeking reformation of Progressive’s coverage to raise the UM/UIM limits to match the liability limits of Progressive’s policy. Mrs. Etcheverry argued that the coverage under the UM/UIM provision of the policy should be deemed to be the same as the general liability limit — $1,000,-000 — because her election to take lesser coverage constituted a rejection under the New Mexico uninsured motorist statute. Rejections are strictly governed by the statute and must conform to specific provisions. Because the election of coverage of $100,000 did not conform to those provisions, Mrs. Etcheverry argued, the policy *855 should be construed against Progressive and in favor of the general liability limit. The district court denied Mrs. Etchever-ry’s motion and dismissed the case with prejudice.
In dismissing the case, the district court ruled that the UM/UIM coverage provided to Mrs. Etcheverry was limited to $100,000. The district court considered whether “New Mexico law requires that anyone selecting UM/UIM coverage at a level less than their policy’s liability limits must execute a written rejection of the maximum limits and, in the absence of such a written rejection, a court must reform the policy to reflect UM/UIM coverage equal to the policy’s liability limits.” Id. The court, applying New Mexico state law, ruled that the selection of an amount of UM/UIM coverage less than a general liability amount did not constitute a rejection and thus refused to reform the policy.
The court first looked to the New Mexico statute regarding uninsured motorists, N.M. Stat. § 66-5-301(A). The statute requires that every automobile liability policy include the option of uninsured and underinsured motorist coverage. Prospective policyholders may choose not to purchase any UM/UIM coverage so long as the refusal is in writing. Additionally, the New Mexico Superintendent of Insurance has promulgated rules regarding UM/UIM coverage that require any rejection of coverage be made in writing as “part of the policy of bodily injury and property damage insurance.” Aplt’s App. at 323 (quoting N.M.Code R. § 13.12.3.9). Unless completely rejected, however, the New Mexico statute requires that the level of UM/UIM coverage provided by an insurance company must meet at least the minimum floor set by the Mandatory Financial Responsibility Act, N.M Stat. § 66-5-215, which is $25,000. The maximum amount available is the amount of the general coverage under the policy. Accordingly, as the district court acknowledged, “New Mexico’s statute stands in contrast to statutes in a number of other states that require an insured to purchase UM/UIM coverage with limits equal to their liability limits unless they specifically opt out.” Aplt’s App. at 323 (emphasis in original).
The court found that, in selecting the policy “Mr. Etcheverry affirmatively purchased” a higher limit than the minimum set out by the statute. Id. at 324. Thus, it concluded that the only way for Mrs. Etcheverry to prevail “is for the Court to find that the affirmative selection of a UM/ UIM coverage limit in any amount less than the full liability limits constitutes a ‘rejection’ of UM/UIM coverage that must be made in writing.” Id. In determining whether the selection of the $100,000 in coverage counts as a rejection, the district court looked to the legislative intent and plain meaning of the statute, observing that “[q]uite simply, nothing in the plain language of either the statute or the regulation can be read to indicate that the selection of any level of UM/UIM coverage less than full bodily injury liability coverage constitutes a ‘rejection’ of UM/UIM coverage requiring a written waiver.” Id. at 325. It found that the purpose of the statute and regulations is not to require or even encourage a particular amount of insurance to be purchased; rather, the purpose of the statute and regulations is to encourage some coverage of UM/UIM insurance and to ensure that any waiver or rejection of the UM/UIM coverage is done knowingly and voluntary. That purpose was satisfied here: the Etcheverrys had $100,000 UM/UIM coverage. Finally, the district court emphasized that the coverage amount was clearly stated in the insurance contract — in contrast to other cases in which the amount selected may have been confusing for the insured. Thus, the court granted summary judgment for Progressive.
*856 Mrs. Etcheverry and Weed Warrior Services filed this appeal to overturn the district court’s ruling. In addition, they motioned the court to certify this case to the New Mexico Supreme Court. Progressive responded that it has “no position” on the motion to certify. However, it added that certification is unnecessary because there is sufficient precedent on this matter.

DISCUSSION

A. New Mexico certification statute
Under Tenth Circuit rules, “[w]hen state law permits, this court may .... certify a question arising under state law to that state’s highest court according to that court’s rules.” 10th Cir. R. 27.1(A). ‘Whether to certify a question of state law to the state supreme court is within the discretion of the federal court.” Armijo v. Ex Cam Inc., 843 F.2d 406, 407 (10th Cir.1988). The New Mexico certification statute states: “The supreme court of this state may answer a question of law certified to it by a court of the United States ... if the answer may be determinative of an issue in pending litigation in the certifying court and there is no controlling appellate decision, constitutional provision or statute of this state.” N.M. Stat. § 39-7-4.
B. Ambiguity exists on the meaning of the New Mexico Uninsured Statute
Section A of the New Mexico uninsured motorist statute states that:
“No motor vehicle or automobile liability policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person and for injury to or destruction of property of others arising out of the ownership, maintenance or use of a motor vehicle shall be delivered or issued for delivery in New Mexico with respect to any motor vehicle registered or principally garaged in New Mexico unless coverage is provided therein or supplemental thereto ... for the protection of persons insured there under who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death, and for injury to or destruction of property resulting therefrom, according to the rules and regulations promulgated by, and under provisions filed with and approved by, the superintendent of insurance.”
N.M. Stat. § 66-5-301(A). Section B of the statute expands this language to include underinsured motorist coverage. Id. § 66-5-301(B). Section C of the statute states: “The named insured shall have the right to reject uninsured motorist coverage as described in Subsections A and B of this section[.]” Id. § 66-5-301(C). The New Mexico Administrative Code, Tit. 13, Ch. 12, Part 3, “Uninsured and Unknown Motorist Coverage,” states the requirements for rejection of UM/UIM coverage — “[t]he rejection of the provisions covering damage caused by an uninsured or unknown motor vehicle as required in writing by the provisions of Section 66-5-301 N.M. Stat. 1978 must be endorsed, attached, stamped or otherwise made a part of the policy of bodily injury and property damage insurance.” N.M.Code R. § 13.12.3.9.
Four courts — a federal district court and three New Mexico courts of appeals — have decided the question of what rejection means under the statute differently from the district court below. See Farm Bur. Mut. Ins. Co. v. Jameson, 472 F.Supp.2d 1272 (D.N.M.2006); Romero v. Progressive Nw. Ins. Co., 148 N.M. 97, 230 P.3d 844, 849 (2009), cert. denied, No. 32,065, 147 N.M. 673, 227 P.3d 1055 (Jan. 7, 2010); Jordan v. Allstate Ins. Co., No. 28,638, 2009 WL 6634039, slip op. at 6 (N.M.Ct.App. Oct. 29, 2009), cert. denied, No. 32,063, 147 N.M. 673, 227 P.3d 1055 (Jan. 7, *857 2010); Farmers Ins. Co. of Ariz. v. Chen, 148 N.M. 151, 231 P.3d 607, 608 (2010).
First, the federal district court in Farm Bureau Mutual Insurance Company v. Jameson, ruled that the election to take UM/UIM coverage in amount less than the general coverage constitutes a rejection under the New Mexico statute. 472 F.Supp.2d at 1280. The court looked first to a line of cases which equated the coverage for general liability and UM/UIM insurance. For example, the court pointed to a case where a state court found that the geographic parameters of the general liability coverage sets the geographic parameters for the UM/UIM coverage. See State Farm Mut. Auto. Ins. Co. v. Marquez, 130 N.M. 591, 28 P.3d 1132, 1135 (2001). This general line of cases, “suggests that the New Mexico judiciary reads § 66-5-301 as requiring UM coverage to be offered in an amount equal to liability coverage and as requiring that a rejection of such must be signed, written, and attached, stamped, or otherwise made a part of the policy.” Jameson, 472 F.Supp.2d at 1282. The court in Jameson also considered what it saw as the overarching aim and purpose of the statute — to make coverage as widely available as possible and to ensure the full range of coverage is offered to the consumer. Implementation of that policy, according to the Jameson court, requires proof that UM coverage was offered up to the maximum limits and, if not elected, evidence that the consumer affirmatively rejected such limits: “the Legislature has chosen statutorily to require that UM coverage be made available up to the liability limits .... the only way to effectively implement that is to place a duty on the insurance company to make that offer and to determine whether there has been a knowing rejection of that offer.” Id. (internal quotation marks and citations omitted). Finally, the court emphasized that a number of other states have similarly found that a decision to take less UM/UIM coverage than the general coverage amount is equivalent to a “rejection.” Id. (“The Court, moreover, recognizes that courts in several other states have reached similar conclusions to the one it reaches here on this issue. In interpreting their states’ UM statutes, the Supreme Court of Delaware and the Courts of Appeals in North Carolina, South Carolina, and Oregon have all done so.”).
In Romero v. Progressive Northwestern Insurance Comany, the New Mexico Court of Appeals, reached the same conclusion. 230 P.3d 844, 849. The Romero court first ruled that “New Mexico’s uninsured motorist statute requires insurers to offer UM/UIM coverage of not less than the minimum amount statutorily required and up to the level of the liability coverage contained within the policy.” Id. at 849. Next, the court stated that, given this requirement, it “logically follows that when an insured purchases UM/UIM coverage either in an amount less than their liability coverage or declines UM/UIM coverage altogether, the insured has rejected some or all of the available UM/UIM coverage.” Id. In another New Mexico Court of Appeals decision, Jordan v. Allstate Insurance Company, the court applied Romero and concluded that “a purchase of an amount less than the liability limit by the insured is a rejection of the UM/UIM coverage that is statutorily available to the insured.” 230 P.3d 844, 849. The New Mexico Court of Appeals also applied this decision in Farmers Insurance Company v. Chen, finding that “a purchase of an amount less than the liability limit by the insured is a rejection of the UM/UIM coverage that is statutorily available to the insured.” 231 P.3d 607, 609.
These cases demonstrate the ambiguity of the statute, § 66-5-301, and indicate the need for a definitive answer from the New Mexico Supreme Court. At the crux of *858 this debate is the determination of the New Mexico legislature’s intent in passing the statute. See Smith Mach. Corp. v. Hesston, Inc., 102 N.M. 245, 694 P.2d 501, 503 (1985) (in interpreting a statute the court’s “duty is to find that interpretation which can most fairly be said to be imbedded in the statute in the sense of being most harmonious with its scheme and with the general purpose of the legislature” (quoting Pittsburgh and Midway Coal Mining Co. v. Revenue Division, Taxation and Revenue Dept., 99 N.M. 545, 660 P.2d 1027, 1041 (1983))). In our view, it is unclear whether the goal of the statute is simply to ensure that UM/UIM coverage is offered, or whether the goal is to encourage the greatest amount of UM/UIM coverage and to ensure that a consumer has specifically rejected UM/UIM limits equal to general liability limits.
As previously stated, there is support for both views of the statute’s purpose. The district court’s decision below, as well as the New Mexico Court of Appeal’s decision in Pielhau v. RLI Insurance Company, 144 N.M. 554, 189 P.3d 687, 691 (2008), conclude that offering some coverage is the goal. See Aplt’s App. at 323-24; Pielhau, 189 P.3d at 691 (“Our UM/UIM statute ... is a ‘minimum liability5 statute. New Mexico has no requirement that uninsured coverage must equal the policy’s coverage for bodily injury and property liability.... Athough, under the statute, the insured has the option of purchasing coverage up to these limits, coverage is statutorily required only to the minimum amounts set by the legislature. Accordingly, the policy purpose of the statute is met when the insured’s underlying automobile coverage provides minimum UM/ UIM coverage.”) Id. (emphasis added) (citations omitted). On the other hand, however, there are persuasive arguments lodged by other courts, such as the district court in Jameson, that the decision to take UM/UIM coverage in a lesser amount than the general coverage is a rejection of some coverage.
We also acknowledge the general trend to interpret the New Mexico uninsured statute broadly. The New Mexico Supreme Court has stated that the statute has a remedial purpose and thus, that the language of the statute must be interpreted liberally to further its objectives. Kaiser v. DeCarrera, 122 N.M. 221, 923 P.2d 588, 590 (1996). Thus, although a plausible reading of the statute supports Progressive’s position, other precedents suggest that the statute should be read liberally to aid policyholders who attempt to broaden the reach of this statute.
Given the tension between the cases addressing the issue, the ambiguity in the statute, and the lack of a New Mexico Supreme Court case settling this issue, we thus respectfully request that the New Mexico Supreme Court resolve this question of New Mexico state law. •
CONCLUSION
This court concludes that certification of this question of New Mexico state law will further the interests of comity and federalism by giving the New Mexico Supreme Court the opportunity to answer the question in the first instance, should it elect to do so. This court recognizes and appreciates the discretion of the New Mexico Supreme Court to reformulate the question posed herein.
The Clerk of this court shall transmit a copy of this certification order to counsel for all parties. The Clerk shall also forward, under the Tenth Circuit’s official seal, a copy of this certification order and the briefs filed in this court to the New Mexico Supreme Court. This appeal is ordered ABATED pending resolution of the certified question.
*859 We greatly appreciate the consideration of this request by our honorable colleagues on the New Mexico Supreme Court.

. Before the district court, Progressive attempted to argue that the policy did not cover Mrs. Etcheverry. The district court ruled that Progressive had waived this argument by earlier making substantive arguments regarding the coverage. The court wrote that: "it considers Mrs. Etcheverry to be a covered insured in this case solely because of Progressive’s initial admissions. It expresses no opinion as to whether Mrs. Etcheverry would otherwise be considered a covered insured or if a similarly situated person under a similar policy should be considered a covered insured if injured while occupying a non-covered vehicle." (Aplt's App. 321 n. 5.)