Certiorari Denied, August 13, 2010, No. 32,512

IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: 2010-NMCA-082

Filing Date: May 7, 2010

Docket No. 29,087

LEE GULBRANSEN,

       Plaintiff-Appellant,

v.

PROGRESSIVE HALCYON INSURANCE
COMPANY d/b/a PROGRESSIVE DIRECT,
a foreign corporation, and IAN WILLIS,

       Defendants-Appellees.

APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY
Linda M. Vanzi, District Judge

Law Office of LeeAnn Ortiz, LLC
LeeAnn Ortiz
Albuquerque, NM

for Appellant

Simone, Roberts & Weiss, P.A.
Meena H. Allen
Albuquerque, NM

for Appellees

## OPINION

**VIGIL, Judge.**

{1}    This is another case that requires us to determine whether the insured Plaintiff validly rejected underinsured motorist (UIM) coverage, and whether such coverage should therefore be read into Plaintiff's policy. What makes this case different is that the question is

1

presented in the context of UIM property damage coverage. For the reasons that follow, we reverse the district court summary judgment ruling that denies Plaintiff's claim for UIM property damage coverage up to policy liability limits of $50,000.

## BACKGROUND

**{2}**      Defendant Progressive Halcyon Insurance Company (Progressive) issued an automobile insurance policy to Plaintiff which, in significant part, provided property damage liability coverage, for each accident, in the amount of $50,000 and uninsured motorist (UM) property damage coverage of $25,000. The policy provides no coverage for UIM property damage coverage.

**{3}**      The present case was precipitated when Tortfeasor drove her vehicle into two vehicles owned by persons other than Plaintiff, and then into Plaintiff's house, causing actual property damages of $34,939. This did not include other damages such as loss of use, diminished value, emotional distress, or punitive damages. Tortfeasor's own property damage liability coverage was for $25,000, and Plaintiff and the other two victims each received a pro rata share of that coverage. Plaintiff's share was $19,405, and with Progressive's consent, Plaintiff settled with Tortfeasor and her insurer for this amount. Plaintiff's home insurer then paid for the actual construction costs of $34,939 to repair the damages to the home and received the entire $19,405 pro rata share paid by Tortfeasor's liability carrier. The home insurer did not pay any other damages.

**{4}**      Plaintiff thereafter sought UM and UIM property damage coverage from Progressive. The district court ruled that Plaintiff is not entitled to any coverage from Progressive on the basis that there is no UIM coverage for property damage under either the automotive policy or NMSA 1978, Section 66-5-301 (1983). Summary judgment was granted to Progressive, and Plaintiff appeals.

## DISCUSSION

### Standard of Review

**{5}**      Summary judgment is properly granted when "there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Self v. United Parcel Serv., Inc.*, 1998-NMSC-046, ¶ 6, 126 N.M. 396, 970 P.2d 582. On appeal, we review de novo the district court decision to grant summary judgment, *Rehders v. Allstate Insurance Co.*, 2006-NMCA-058, ¶ 12, 139 N.M. 536, 135 P.3d 237, and construe all reasonable inferences in favor of the non-moving party. *Montgomery v. Lomos Altos, Inc.*, 2007-NMSC-002, ¶ 16, 141 N.M. 21, 150 P.3d 971. Similarly, we review de novo questions of statutory construction. *Cooper v. Chevron U.S.A., Inc.*, 2002-NMSC-020, ¶ 16, 132 N.M. 382, 49 P.3d 61.

### New Mexico Law Requires That Insurers Offer UIM Coverage for Property Damage

**{6}** At the outset, we briefly address Plaintiff's argument that he is entitled to both UM and UIM coverage—UM coverage because Tortfeasor's insurance policy excluded punitive damages under the liability policy and UIM coverage because his actual damages exceeded the $19,405 pro rata share paid by Tortfeasor's insurer. We disagree with Plaintiff's demarcation between UM and UIM coverage. Because Plaintiff recovered some money from Tortfeasor's liability policy, but not all of his claimed damages, his claim is appropriately viewed as a claim for UIM coverage. *See Manzanares v. Allstate Ins. Co.*, 2006-NMCA-104, ¶¶ 5-6, 140 N.M. 227, 141 P.3d 1281 (characterizing punitive damages as deriving from actual damages for purposes of UIM coverage, and viewing the plaintiff's attempt to parse out the punitive damages portion of her claim from the remainder of her claim as "an overly semantical distinction unsupported by the language of the statutes, regulations, or case law").

**{7}** It is statutorily mandated that insurance companies offer both UM and UIM coverage to their insureds. *See Arias v. Phoenix Indem. Ins. Co.*, 2009-NMCA-100, ¶ 7, 147 N.M. 14, 216 P.3d 264, *cert. denied*, 2009-NMCERT-008, 147 N.M. 395, 223 P.3d 940. In relevant part, Section 66-5-301 provides:

> A.     No motor vehicle or automobile liability policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person and for injury to or destruction of property of others arising out of the ownership, maintenance or use of a motor vehicle shall be delivered or issued . . . unless coverage is provided therein or supplemental thereto in minimum limits for bodily injury or death and for injury to or destruction of property as set forth in Section 66-5-215 NMSA 1978 and such higher limits as may be desired by the insured, but up to the limits of liability specified in bodily injury and property damage liability provisions of the insured's policy, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death, and for injury to or destruction of property resulting therefrom, according to the rules and regulations promulgated by, and under provisions filed with and approved by, the superintendent of insurance.

> B.     The uninsured motorist coverage described in Subsection A of this section shall include underinsured motorist coverage for persons protected by an insured's policy. For the purposes of this subsection, "underinsured motorist" means an operator of a motor vehicle with respect to the ownership, maintenance or use of which the sum of the limits of liability under all bodily injury liability insurance applicable at the time of the accident is less than the limits of liability under the insured's uninsured motorist coverage. No motor vehicle or automobile liability policy sold in New Mexico shall be required to include underinsured motorist coverage

3

until January 1, 1980.

**{8}** Progressive asserts that the requirement that insurers offer UIM coverage extends only to coverage for bodily injury or death and does not extend to UIM property damage coverage. In support of its position, Progressive refers to the statutory definition of "underinsured motorist" as provided in the second sentence of Subsection (B), which only mentions coverage for bodily injury and not property damage. From this, Progressive concludes that an underinsured motor vehicle is one in which there is inadequate coverage for bodily injury, but not for property damage.

**{9}** Progressive's view, however, fails to acknowledge the first sentence of Subsection (B), which provides that UM coverage described in Subsection (A) (which includes bodily injury and property damage) shall include UIM coverage. In resolving any conflict between the first and second sentences of Subsection (B), we are mindful that the requirement that insurers offer UM and UIM coverage embodies a strong public policy "to expand insurance coverage and to protect individual members of the public against the hazard of culpable uninsured [and underinsured] motorists." *Arias*, 2009-NMCA-100, ¶ 7 (alteration in original) (internal quotation marks and citation omitted). To view Subsection (B) as limiting this public policy to bodily injury would ignore the underlying legislative intent to put the insured in the same position he or she would have been in if the tortfeasor had liability coverage equal to the UM and UIM protection as provided by the insured's policy. *Id.* Thus, we conclude that the failure of the Legislature to reference property damage in its definition of underinsured motorist was necessarily the result of legislative oversight rather than a limitation on the requirement that insurers offer UIM property damage coverage. *See State v. Trujillo*, 2009-NMSC-012, ¶ 21, 146 N.M. 14, 206 P.3d 125 (recognizing that if adherence to the literal words of a statute would lead to "injustice, absurdity or contradiction," the Court will reject the plain meaning "in favor of an interpretation driven by the statute's obvious spirit or reason." (internal quotation marks and citation omitted)); *Romero v. Dairyland Ins. Co.*, 111 N.M. 154, 156, 803 P.2d 243, 245 (1990) (holding that "[b]ecause we liberally interpret the statute in order to implement its remedial purpose, language in the statute that provides for an exception to [UM] coverage should be construed strictly to protect the insured" (citation omitted)).

**In the Absence of a Valid Rejection of UIM Coverage, the Policy Must Be Read to Include UIM Coverage Equal to the Amount of Liability Limits in the Automobile Insurance Policy**

**{10}** In light of our conclusion that Progressive was statutorily required to offer Plaintiff UIM property damage coverage, we next consider the effect of its failure to do so. Absent an offer of UIM coverage, Plaintiff necessarily had no opportunity to opt out of and reject UIM property damage coverage. *See Marckstadt v. Lockheed Martin Corp.*, 2010-NMSC-001, ¶ 15, 147 N.M. 678, 228 P.3d 462 (concluding that "the insurer may not exclude UM/UIM coverage from an automobile liability policy unless it has offered it to the insured, and the insured has exercised the right to reject the coverage" (citation omitted)). And

absent a valid rejection, our case law provides that statutorily mandated UM and UIM coverage must be read into the insurance policy in amounts equal to the liability limits of the policy. *See Romero v. Progressive Nw. Ins. Co.*, 2010-NMCA-024, ¶¶ 22, 24, 39, 148 N.M. 97, 230 P.3d 844 (holding that insurers are statutorily required to offer UM/UIM coverage up to the liability limits of the policy and that an insured's purchase of an amount less than the liability limit is a rejection of the statutorily available UM/UIM coverage), *cert. granted*, 2010-NMCERT-003, ___ N.M. ___, ___P.3d ___; *Farmers Ins. Co. of Ariz. v. Chen*, 2010-NMCA-031, ¶ 27, 148 N.M. 151, 231 P.3d 607 (Vigil, J., dissenting) (stating that where a valid rejection of UM/UIM coverage has not been obtained by the insurer, such coverage must "be read into the policy at the liability limits, regardless of the intent of the parties or the fact that a premium has not been paid"), *cert. granted*, 2010-NMCERT-___, ___ N.M. ___, ___ P.3d ___.

**{11}** In the present case, Progressive did not offer Plaintiff UIM coverage, and Plaintiff thereby made no election to reject such coverage. Because the policy limits for property damage liability was $50,000, we conclude that the policy should have been read to include UIM property damage coverage up to $50,000. We cannot conclude that Plaintiff's selection of coverage that did not include UIM coverage (and that included UM coverage in less than the policy limits) somehow amounted to a valid rejection of statutorily available UM and UIM coverage. *See generally Marckstadt*, 2010-NMSC-001, ¶¶ 25, 32 (holding that in order to comply with statutory and regulatory requirements when excluding UM/UIM coverage in an automobile policy, the insurer must obtain written rejections of such coverage from the insured and such rejection must "clearly and unambiguously call to the attention of the insured the fact that such coverage has been waived" (internal quotation marks and citation omitted)); *Jordan v. Allstate Ins. Co.*, No. 28,638, slip op. at 9 (N.M. Ct. App. Oct. 29, 2009) (recognizing that a declarations page that does not contain a specific reference to the rejection of UM/UIM coverage is not sufficient to meet the requirements for a valid rejection of that coverage), *cert. granted*, 2010-NMCERT-003, ___ N.M. ___, ___ P.3d ___.

**{12}** We acknowledge the holding in *Pielhau v. RLI Insurance Co.*, 2008-NMCA-099, 144 N.M. 554, 189 P.3d 687, *cert. quashed*, 2009-NMCERT-002, 145 N.M. 705, 204 P.3d 30, which declared the New Mexico UM/UIM statute to be a minimum liability statute. From this, Progressive advocates any required coverage therefore needed to be provided only to the minimum statutory limits as set forth in NMSA 1978, Section 66-5-215 (1983). But as emphasized in our discussion of *Pielhau* in *Romero*, 2010-NMCA-024, ¶ 20, "[t]he lack of a requirement that a policy contain UM/UIM coverage in a specific amount does not obviate the statute's unambiguous requirement that insurers must *offer* UM/UIM coverage and that they must offer such coverage at a level equal to the liability limits of the policy." (Emphasis added.) As in *Romero*, we conclude in this case that *Pielhau* is not controlling.

**{13}** We also acknowledge that our Supreme Court recently accepted certification from *Progressive Northwestern Insurance Co. v. Weed Warrior Services*, No. 09-2000, 2010 WL 565427 (10th Cir. Feb. 11, 2010), the resolution of which may impact whether, in the absence of a valid rejection, UM/UIM coverage is read into the policy for the minimum

5

statutory limits, or instead as determined in the present case, for the policy limits. We further recognize that our Supreme Court recently granted certiorari to review our related decisions in *Romero*, *Chen*, and *Jordan*. However, *Romero*, *Chen*, and *Jordan* are the latest pronouncements from this Court, and therefore remain controlling precedent upon which we rely until overruled or reversed by the Supreme Court. *See Arco Materials, Inc. v. Taxation & Revenue Dep't*, 118 N.M. 12, 14, 878 P.2d 330, 332 (Ct. App. 1994), *rev'd on other grounds by Blaze Constr. Co. v. Taxation & Revenue Dep't*, 118 N.M. 647, 884 P.2d 803 (1994).

**On Remand, the District Court Must Decide the Matter of Offsets and the Impact Our Holding Has on Plaintiff's "Bad Faith and Extra-Contractual" Claims**

**{14}**    The parties also dispute, in the event this Court holds as we have that UIM property damage coverage should be read into the policy, whether Progressive is entitled to a statutory offset of amounts of liability coverage received by Plaintiff. *See generally Schmick v. State Farm Mut. Auto. Ins. Co.*, 103 N.M. 216, 222, 704 P.2d 1092, 1098 (1985) (providing that an insured is entitled to collect "from his underinsured motorist carrier the difference between his uninsured motorist coverage and the tortfeasor's liability coverage or the difference between his damages and the tortfeasor's liability coverage, whichever is less"). Because the district court ruled that Plaintiff was not entitled to any UIM coverage, it did not address the matter of offsets. In light of our holding that coverage for UIM property damage should be read into the policy at the policy limits, we remand for the district court to address the matter of offsets. *See generally Arias*, 2009-NMCA-100, ¶ 20 (remanding for the district court to consider the issue of offsets).

**{15}**    Lastly, apart from a claim for breach of contract based upon the denial of UIM coverage, Plaintiff also alleged, as collectively referred to before the district court, "bad faith and extra-contractual claims." Both parties agreed that these claims are predicated on whether Plaintiff is entitled to UIM coverage, and the district court summary judgment ruling in favor of Progressive on these claims is presumably based on its determination that Plaintiff is not entitled to such coverage. Given our holding that Plaintiff is entitled to UIM property damage coverage, we reverse the district court summary judgment ruling on these claims and remand for further consideration of these claims, including a consideration of Plaintiff's claim for punitive damages. However, we express no opinion on what damages, if any, Plaintiff is entitled to receive, apart from the actual property damages of $34,939, and, subject to the consideration of any offsets as previously set forth herein.

**CONCLUSION**

**{16}**    For the reasons discussed above, we hold that the automotive policy should be viewed as providing UIM property damage coverage in the amount equal to the policy's limits for property damage of $50,000. We accordingly (1) reverse the district court summary judgment ruling that Plaintiff is not entitled to such coverage; (2) reverse the district court summary judgment ruling on Plaintiff's "bad faith and extra-contractual

claims"; and (3) remand for further proceedings consistent with this opinion.

**{17}  IT IS SO ORDERED.**

_____

**MICHAEL E. VIGIL, Judge**

**WE CONCUR:**

_____

**JONATHAN B. SUTIN, Judge**

_____

**TIMOTHY L. GARCIA, Judge**

**Topic Index for _Gulbransen v. Progressive Halcyon Ins. Co._, Docket No. 29,087**

| **AE** | **APPEAL AND ERROR** |
|---|---|
| AE-RM | Remand |
| AE-SR | Standard of Review |
| | |
| **CP** | **CIVIL PROCEDURE** |
| CP-SJ | Summary Judgment |
| | |
| **IN** | **INSURANCE** |
| IN-MV | Motor Vehicle Insurance |
| IN-UM | Uninsured or Underinsured Motorist |
| | |
| **ST** | **STATUTES** |
| ST-IP | Interpretation |