**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2023-NMCA-019**

**Filing Date: December 6, 2022**

**No. A-1-CA-39014 and No. A-1-CA-39799**
**(consolidated for purpose of opinion)**

**GRACIELA CONTRERAS,**

Plaintiff-Appellant,

v.

**FRED LOYA INSURANCE COMPANY**
**d/b/a YOUNG AMERICA INSURANCE**
**COMPANY,**

Defendant-Appellee.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Joshua A. Allison, District Judge**

and

**MARIA VARELA-BURCIAGA,**

Plaintiff-Appellant,

v.

**STATE FARM MUTUAL AUTOMOBILE**
**INSURANCE COMPANY,**

Defendant-Appellee.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Erin B. O'Connell, District Judge**

Ferrance Law, P.C.
David A. Ferrance
Albuquerque, NM

for Appellant Graciela Contreras

O'Brien & Padilla, P.C.
Alicia M. Santos
Albuquerque, NM

for Appellee Fred Loya Insurance Company

Jarmie & Rogers, P.C.
Mark D. Standridge
Las Cruces, NM

for Amicus Curiae NM Defense Lawyers Association (No. A-1-CA-39014)

Law Office of Robert J. Andreotti
Robert J. Andreotti
Santa Fe, NM

for Appellant Maria Varela-Burciaga

Stiff, Garcia & Associates, LLC
John S. Stiff
Edward F. Snow
Albuquerque, NM

for Appellee State Farm Mutual Automobile Insurance Company

**OPINION**

**BOGARDUS, Judge.**

**{1}**      In these consolidated cases,[1] Plaintiff Graciela Contreras and Plaintiff Maria Varela-Burciaga (collectively, Plaintiffs) each appeal from a district court order granting summary judgment in favor of, in Contreras's case, Defendant Fred Loya Insurance Company and, in Varela-Burciaga's case, Defendant State Farm Mutual Automobile Insurance Company (collectively, Defendants) on Plaintiffs' claims arising from Defendants' denial of uninsured and underinsured motorist (UM/UIM) benefits. Plaintiffs each argue that the district court erred by granting summary judgment based on the erroneous conclusion that the respective insurance company obtained from each of them a valid rejection of UM/UIM coverage. In addition, Plaintiff Contreras argues that the district court erred in dismissing her claims, alleging violations of the Unfair Practices Act (the UPA), NMSA 1978, §§ 57-12-1 to -26 (1967, as amended through 2019). We reverse in *Contreras v. Fred Loya Insurance Co.*, No. A-1-CA-39014, and affirm in *Varela-Burciaga v. State Farm Mutual Automobile Insurance Company*, No. A-1-CA-39799.

---

1Because these appeals raise substantially similar issues, we exercise our discretion to consolidate them for decision. *See* Rule 12-317(B) NMRA.

## BACKGROUND

**{2}** These cases arise out of car accidents involving underinsured drivers. At issue in both cases is whether each insurance company obtained a valid rejection of UM/UIM coverage from the respective Plaintiff. We view the facts of each case in the light most favorable to Plaintiffs, against whom summary judgment was granted. *See Haygood v. United Servs. Auto. Ass'n*, 2019-NMCA-074, ¶ 7, 453 P.3d 1235.

### A.    *Contreras v. Fred Loya Insurance Co.*

**{3}** Contreras, whose primary language is Spanish and whose understanding of English is limited to common greetings or phrases, purchased an automobile insurance policy from Fred Loya Insurance Company (Loya) through a Spanish-speaking representative. The representative provided Contreras an English-language form for the selection or rejection of UM/UIM coverage. The selection/rejection form stated that the insured had the right to purchase or reject UM/UIM coverage, offered UM/UIM coverage up to the insured's liability limits, and provided the premium costs for UM/UIM coverage up to the insured's liability limits. Contreras signed the selection/rejection form under a heading stating, "REJECTION OF UNINSURED/UNDERINSURED MOTORISTS COVERAGE." The policy's declarations page stated that UM/UIM coverage had been "OFFERED AND REJECTED." Contreras attested that the "agency's representative had to fill out [her] application for insurance for [her], because it was in English," and that the representative told her where to sign and initial the forms. Contreras also attested that no one discussed UIM insurance with her, or offered her this coverage or discussed her rejection of this coverage. Loya disputed this point, attesting that, when assisting Spanish-speaking customers, its procedures call for explaining UM/UIM coverage to the customer and verbally offering UM/UIM coverage up to the customer's liability limits.

**{4}** Contreras was later involved in a car accident with an underinsured driver and filed a claim for UM/UIM benefits, which Loya denied. Contreras sued Loya, seeking a declaratory judgment that she was entitled to UM/UIM benefits and alleging various claims based on Loya's denial of these benefits, including breach of contract, insurance bad faith, and unfair and unconscionable trade practices under the UPA. The district court denied Contreras's claim for a declaratory judgment that she was entitled to UM/UIM benefits, relying on the four requirements that insurers must satisfy to obtain a valid rejection of UM/UIM coverage under *Jordan v. Allstate Insurance Co.*, 2010-NMSC-051, ¶ 22, 149 N.M. 162, 245 P.3d 1214. The district court reasoned, "If [*Jordan*'s four requirements] are met, as they were here, the [c]ourt must conclude that the rejection of UM/UIM coverage was valid." Concluding that Loya had obtained a valid rejection, the district court granted summary judgment in favor of Loya on all claims.

### B.    *Varela-Burciaga v. State Farm Mutual Automobile Insurance Co.*

**{5}** Varela-Burciaga, whose primary language is Spanish and who does not speak English, purchased an automobile insurance policy from State Farm Mutual Automobile Insurance Company (State Farm) through a Spanish-speaking representative. Varela-

Burciaga was provided an English-language form for the rejection of UM/UIM coverage, which included a list of premium costs for different levels of UM/UIM coverage. The rejection form stated, "I acknowledge and agree that I have been offered [UM/UIM c]overage with limits equal to my [l]iability [c]overage limits," and then provided check-mark boxes where the insured could indicate whether he or she wished to reject UM/UIM coverage equal to his or her liability limits or in its entirety. Varela-Burciaga checked the box for "reject [UM/UIM c]overage in its entirety" and signed the rejection form. The policy's declaration page stated, in relevant part, "YOU HAVE REJECTED THE OFFER OF [UM/UIM] COVERAGE." Varela-Burciaga does not dispute that an agent "explained the coverages in Spanish," and "explained to her in Spanish that by signing the UM rejection form, that 'means you will not have coverage under the [UM/UIM c]overage under your policy.'"

{6}    Varela-Burciaga was later involved in a car accident with an underinsured driver and filed a claim for UM/UIM benefits, which State Farm denied. Varela-Burciaga sued State Farm, seeking a declaratory judgment that her policy be reformed to include UM/UIM coverage and asserting a claim for breach of contract. The district court granted summary judgment in favor of State Farm, reasoning that State Farm "was not required by law to provide a rejection of [UM/UIM] coverage to [Varela-Burciaga] in Spanish."

**DISCUSSION**

**I.    Standard of Review**

{7}    Our resolution of these cases requires us to interpret NMSA 1978, Section 66-5-301 (1983) and 13.12.3.9 NMAC to determine whether each insurance company obtained a valid rejection of UM/UIM coverage. *See Jordan*, 2010-NMSC-051, ¶ 14. Accordingly, these cases present questions of law, which we review de novo. *See Marckstadt v. Lockheed Martin Corp.*, 2010-NMSC-001, ¶ 13, 147 N.M. 678, 228 P.3d 462.

{8}    "This Court's primary goal when interpreting statutes is to further legislative intent." *Jordan*, 2010-NMSC-051, ¶ 15. When construing the legislative intent behind our UM/UIM statute, this Court has long applied a "qualitatively different analysis" than we use when construing many other types of statutes and insurance policies. *Padilla v. Dairyland Ins. Co.*, 1990-NMSC-025, ¶ 10, 109 N.M. 555, 787 P.2d 835. "In a consistent line of cases, [the appellate courts have] liberally interpreted Section 66-5-301 and its implementing regulation, . . . 13.12.3.9 NMAC, for their remedial purposes. The provision of the maximum possible amount of UM/UIM coverage in every insurance policy is the default rule, and any exception to that rule must be construed strictly to protect the insured." *Jordan*, 2010-NMSC-051, ¶ 15 (internal quotation marks and citations omitted).

**II.    Legal Background**

**{9}** Plaintiffs argue that the district court in each case erred by granting summary judgment based on its conclusion that the insurance company obtained a valid rejection of UM/UIM coverage from each of them. Section 66-5-301 governs UM/UIM coverage in New Mexico. Subsections (A) and (B) of the statute require insurance companies to "include in automobile policies UM/UIM coverage ranging from the minimum statutory limits . . . up to the limits of liability coverage contained in a policy." *Arias v. Phoenix Indem. Ins. Co.*, 2009-NMCA-100, ¶ 7, 147 N.M. 14, 216 P.3d 264 (citation omitted). The purpose of this requirement "is to put the insured in the same position he or she would have been in if the tortfeasor had liability coverage equal to the UM/UIM protection as provided by the insured's policy." *Id.* The requirement thus "embodies a strong public policy to expand insurance coverage and to protect individual members of the public against the hazard of culpable uninsured and underinsured motorists." *Id.* (alteration, internal quotation marks, and citation omitted). Consistent with this public policy, Subsection (C) allows an insured to reject the UM/UIM coverage described in Subsections (A) and (B) only if the rejection "satisf[ies] the regulations promulgated by the superintendent of insurance." *Id.* ¶ 8.

**{10}** Interpreting Section 66-5-301 and the applicable insurance regulation, and recognizing that "an insured's decision to reject UM/UIM coverage must be knowing and intelligent in order to effectuate New Mexico's public policy," our Supreme Court has held that a rejection of UM/UIM coverage is valid only if certain requirements are met. *See Jordan*, 2010-NMSC-051, ¶¶ 14-22; *accord Marckstadt*, 2010-NMSC-001, ¶ 16 ("[I]n order for the offer and rejection requirements of Section 66-5-301 to effectuate the policy of expanding UM/UIM coverage, the insurer is required to meaningfully offer such coverage and the insured must knowingly and intelligently act to reject it before it can be excluded from a policy." (emphases omitted)). Thus, in *Jordan*, our Supreme Court stated that an insurer must:

> (1) offer the insured UM/UIM coverage equal to his or her liability limits, (2) inform the insured about premium costs corresponding to the available levels of coverage, (3) obtain a written rejection of UM/UIM coverage equal to the liability limits, and (4) incorporate that rejection into the policy in a way that affords the insured a fair opportunity to reconsider the decision to reject.

2010-NMSC-051, ¶ 22. If the insurer fails to comply with one or more of these requirements, the insured's rejection of coverage is invalid, and "the policy will be reformed to provide UM/UIM coverage equal to the liability limits." *Id.*

**{11}** Plaintiffs do not dispute that they were provided English-language forms for the selection/rejection of UM/UIM coverage, or that they indicated in writing their rejection of UM/UIM coverage. Rather, Plaintiffs argue that, because of their English-language limitations, the forms did not constitute meaningful offers of UM/UIM coverage, and Plaintiffs did not knowingly or intelligently act to reject this coverage. As a result, Plaintiffs contend, the district court in each case erred by determining, as a matter of law, that they had validly rejected UM/UIM coverage. We examine each case in turn.

### III. Contreras's Case: *Jordan* Did Not Foreclose the Possibility That a Rejection of UM/UIM Coverage May Be Invalid Under the Circumstances of This Case

**{12}** In Contreras's case, the district court relied on the requirements as set out in *Jordan* to determine that her rejection was valid, concluding, "If [*Jordan*'s four requirements] are met, as they were here, the [c]ourt must conclude that the rejection of UM/UIM coverage was valid." Contreras does not dispute that the English-language forms she was provided comport with *Jordan* but contends, in particular, that her rejection was invalid because Loya provided her information it knew she could not understand. Loya responds that *Jordan*'s requirements are exclusive and, according to Loya, previously have been applied as such by this Court. Loya contends that this interpretation is supported by *Jordan*'s goal of establishing a workable framework for objectively assessing the validity of rejections to minimize litigation.

**{13}** In Contreras's case, we are presented with an issue that was not directly addressed in *Jordan*. Nevertheless, as we explain, the concepts found in *Jordan* and in *Marckstadt* support the conclusion we reach here.

**{14}** Contreras attested that the only language she speaks fluently is Spanish and that her understanding of English is limited to common greetings or phrases. She also attested that when she purchased the insurance policy, she and a representative only spoke in Spanish, that she has not learned to read or write English other than a few basic words, and that she could not read the English-language UM/UIM selection/rejection form. Finally, Contreras attested that the agency's representative had to fill out the insurance application for her because it was in English and that she signed and initialed where the representative told her to do so. Accordingly, there is, at the very least, a genuine issue of material fact as to whether Contreras can communicate in English.

**{15}** The plaintiffs in *Jordan*, by contrast, never attested that they could not communicate in English. *See generally* 2010-NMSC-051. *Jordan* simply does not speak to the scenario we address here because it did not deal with non-English-speaking insureds. *See Fernandez v. Farmers Ins. Co. of Ariz.*, 1993-NMSC-035, ¶ 15, 115 N.M. 622, 857 P.2d 22 ("The general rule is that cases are not authority for propositions not considered." (internal quotation marks and citation omitted)); *State v. Jones*, 2010-NMSC-012, ¶ 39, 148 N.M. 1, 229 P.3d 474 ("[N]either case expressly considered the waiver issue, and thus neither can be relied on as authority for the [s]tate's argument.").

**{16}** We agree that, in general, insurers can obtain a valid UM/UIM rejection by following the requirements listed in *Jordan*. *See* 2010-NMSC-051, ¶¶ 30-36; *Ullman v. Safeway Ins. Co.*, 2017-NMCA-071, ¶¶ 39-55, 404 P.3d 434. Nevertheless, we conclude that *Jordan* does not require, under the circumstances present in this case, a determination as a matter of law that Contreras's apparent rejection of UM/UIM coverage was valid simply because it complied with the requirements set forth in *Jordan*.

**{17}**     This conclusion is consistent with the guiding principle behind *Jordan*'s prescription of its four requirements: "[I]n order for the offer and rejection requirements of [the UM/UIM statute] to effectuate the policy of expanding UM/UIM coverage, the insurer is required to *meaningfully offer* such coverage and the insured must *knowingly and intelligently act* to reject it before it can be excluded from a policy." *Marckstadt*, 2010-NMSC-001, ¶ 16; *see Jordan*, 2010-NMSC-051, ¶¶ 18, 20 (citing *Marckstadt*, 2010-NMSC-001, ¶¶ 16-17). *Jordan*'s four requirements were thus intended to further the remedial purposes of the UM/UIM statute, including "a legislative purpose to provide for the inclusion of uninsured motorist coverage in every automobile liability policy unless the insured has knowingly and intelligently waived such coverage." *Romero v. Dairyland Ins. Co.*, 1990-NMSC-111, ¶ 9, 111 N.M. 154, 803 P.2d 243; *see Jordan*, 2010-NMSC-051, ¶ 15 (citing *Romero*, 1990-NMSC-111, ¶ 6). Under the circumstances present in Contreras's case, we cannot say that simply providing otherwise valid English-language forms satisfied, as a matter of law, Loya's burden to "meaningfully offer [UM/UIM] coverage" so that Contreras could "knowingly and intelligently act to reject it." *See Marckstadt*, 2010-NMSC-001, ¶ 16. This conclusion is also consistent with our mandate to interpret the UM/UIM statute liberally to implement its remedial purpose and strictly construe any exceptions to protect the insured. *See id.* ¶ 14 ("[I]n light of the purpose of New Mexico's UM/UIM statute to expand coverage to protect members of the public against uninsured motorists, the statute is interpreted liberally to implement that remedial purpose, and any exception will be strictly construed." (alteration, internal quotation marks, and citation omitted)); *Jordan*, 2010-NMSC-051, ¶ 15 (stating that the "primary goal when interpreting statutes is to further legislative intent" and that, "[w]hen construing the legislative intent behind our UM/UIM statute, our [Supreme] Court has long applied a qualitatively different analysis" (internal quotation marks and citation omitted)).

**{18}**     Loya, however, points to principles of contract law—that an individual who signs a contract is bound by it, regardless of whether he or she read the terms. Loya argues that, if Contreras did not understand something in the UM/UIM selection/rejection form, it was her burden "to ask for help and to inquire further before executing the form." However, in cases involving UM/UIM coverage, where we apply a "qualitatively different analysis than we use when construing many other types of statutes and insurance policies," *Jordan*, 2010-NMSC-051, ¶ 15 (internal quotation marks and citation omitted), accepting these arguments would shift the insurer's burden to the insured. Before Loya could exclude UM/UIM coverage from Contreras' policy, Loya had the burden to "*meaningfully offer* such coverage" such that Contreras could "*knowingly and intelligently act* to reject it." *See Marckstadt*, 2010-NMSC-001, ¶ 16. Otherwise, Loya could not secure a valid rejection.[2] *See Farmers Ins. Co. of Ariz. v. Chen*, 2010-NMCA-

---

[2]To the extent that Loya contends that insurers are not responsible for ensuring subjective understanding of UM/UIM coverage, we agree. *See Vigil v. Rio Grande Ins. of Santa Fe*, 1997-NMCA-124, ¶¶ 10, 21-22, 124 N.M. 324, 950 P.2d 297 (stating that an insurer "had no duty to inform [the p]laintiffs of the significance of UM[/UIM] coverage" or "the ramifications of [the purchasers'] decision" to reject such coverage, and that "[n]othing in the applicable statute requires an insurer to make a purchaser aware of the importance of UM[/UIM] coverage before accepting a rejection of such coverage"). Our conclusion does not require that Loya ensure such subjective understanding to secure a valid rejection, and is consistent with our case law requiring that an insured "be appropriately informed that he or she has

031, ¶ 27, 148 N.M. 151, 231 P.3d 607 (explaining that "[w]here a valid rejection of UM/UIM coverage has not been obtained by the insurer, New Mexico law requires UM/UIM coverage to be read into the policy at the liability limits, regardless of the intent of the parties or the fact that a premium has not been paid").

**{19}** In sum, under the circumstances present in Contreras's case, the district court erred by concluding that that there was a valid rejection of UM/UIM coverage simply because Contreras's apparent rejection complied with the requirements set forth in *Jordan*. Having so concluded, we reverse the district court's grant of summary judgment on Contreras's declaratory judgment and breach of contract claims. We additionally vacate the district court's grant of summary judgment on Contreras's remaining claims because the resolution of those claims depended at least in part on the district court's determination that there was a valid rejection of UM/UIM coverage, which we have reversed. Accordingly, we do not address Contreras's additional arguments that the district court erred by dismissing her UPA claims.

**{20}** Based on the foregoing, we remand Contreras's case to the district court. *See Rummel v. Lexington Ins. Co.*, 1997-NMSC-041, ¶ 16, 123 N.M. 752, 945 P.2d 970 ("[O]n appeal, when the [district] court's grant of summary judgment is grounded upon an error of law, the case may be remanded so that the issues may be determined under the correct principles of law."). In determining whether Loya obtained a valid rejection of UM/UIM coverage on remand, the district court should consider the guiding principle behind *Jordan*'s four requirements: "[I]n order for the offer and rejection requirements of [the UM/UIM statute] to effectuate the policy of expanding UM/UIM coverage, the insurer is required to *meaningfully offer* such coverage and the insured must *knowingly and intelligently act* to reject it before it can be excluded from a policy." *Marckstadt*, 2010-NMSC-001, ¶ 16; *see Jordan*, 2010-NMSC-051, ¶¶ 18, 20 (citing *Marckstadt*, 2010-NMSC-001, ¶¶ 16-17). In making this determination, we emphasize, as we discuss below, that a UM/UIM rejection is not invalid as a matter of law simply because the selection/rejection form is not in the insured's primary or preferred language.[3] Instead, consistent with the only other jurisdiction we found to have repeatedly addressed this issue, the district court should consider, for example, the insured's ability to communicate in English, whether an individual's inability to communicate in English was known or should have been known to the insurer, and whether the individual was offered assistance or information in a language he or she could understand in assessing whether the insurer meaningfully offered UM/UIM coverage so that the insured could knowingly and intelligently act to reject it. *Compare Ponce v. Welch*, 15-669, pp. 3, 8

---

rejected the coverage." *Id.* ¶ 10; *cf. Crutcher v. Liberty Mut. Ins. Co.*, 2022-NMSC-001, ¶ 22, 501 P.3d 433 (concluding that "the Legislature intended to place the burden on the policyholders to determine how much [UM/UIM] protection they want and are willing to pay for," and the policyholders' responsibility is premised on their awareness of what they are purchasing).

[3]Loya argues adopting "[Contreras's] argument that a valid rejection by a Spanish[-]speaking individual can only be accomplished by making the UM/UIM selection form available in Spanish would ultimately run afoul of the UM[/UIM] statute because it would lead to a whole class of people being unable to ever reject UM[/UIM] coverage." Contreras, however, does not argue that insurers are required to make UM/UIM selection/rejection forms available in Spanish, and this opinion does not preclude individuals who cannot communicate in English from validly rejecting UM/UIM coverage when provided English-language forms.

(La. App. 5 Cir. 3/16/16); 191 So. 3d 73, 75, 77-78 (concluding that an insurer obtained a valid rejection from a Spanish-speaking insured in part because the insured had lived in the United States for thirty-two years, could converse in English, and did not dispute that the insurance agent had explained to her that she was rejecting UM/UIM coverage), *and Garay-Lara v. Cornerstone Nat'l Ins. Co.*, 2013-2016, p. 6 (La. App. 1 Cir. 5/2/14); 145 So. 3d 423, 426 (concluding that an insurer obtained a valid UM/UIM rejection from a Spanish-speaking insured where the agent explained the details of the available coverage in Spanish), *with Duong v. Salas*, 38,613, pp. 5, 9 (La. App. 2 Cir. 6/23/04); 877 So. 2d 269, 272, 274 (concluding that the insurer had failed to obtain a valid rejection from a non-English-speaking insured where the insured had arrived in the United States less than six months before signing the UM rejection, and the district court could have concluded based on the evidence that the insured had no capacity to communicate in English or to understand the UM waiver, that no one explained the waiver to him, and that his incapacity was known or should have been known to the insurer).

## IV.     Varela-Burciaga's Case: Spanish-Language Forms Are Not Required Under the UM/UIM Statute and Regulations

**{21}**     We turn now to Varela-Burciaga's case. Varela-Burciaga and State Farm filed cross-motions for summary judgment. At the hearing on these motions, the parties agreed that these motions raised the sole legal issue of "whether a failure to provide the UM/UIM waiver form in Spanish violates New Mexico's requirements for obtaining a valid waiver" of UM/UIM coverage. The district court concluded that State Farm "was not required by law to provide a rejection of [UM/UIM] coverage to [Varela-Burciaga] in Spanish." On appeal, Varela-Burciaga contends, in particular, that the English-language UM/UIM rejection form was ineffective to a Spanish speaking insured, such as herself.[4] We agree with the district court.

**{22}**     State Farm presents a reasoned statutory construction argument in its answer brief as to why no such Spanish-translation requirement exists in the UM/UIM statute, and Varela-Burciaga largely fails to address this argument in her reply brief. Indeed, nothing in Section 66-5-301, 13.12.3.9 NMAC, or our case law interpreting these provisions requires an insurer to provide UM/UIM selection/rejection forms in an insured's primary or preferred language. "The Legislature knows how to include language in a statute if it so desires," *Cordova v. Cline*, 2021-NMCA-022, ¶ 9, 489 P.3d 957 (internal quotation marks and citation omitted), and could have included such language had it chosen to do so. *See, e.g.*, NMSA 1978, § 50-15-5(C) (2005) (requiring notice in English and Spanish); NMSA 1978, § 50-17-6(B) (2021) (same); NMSA 1978, § 27-6-17(A)(1) (1993) (same); *cf. Schultz ex rel. Schultz v. Pojoaque Tribal Police Dep't*, 2013-NMSC-013, ¶ 36, 484 P.3d 954 ("[W]hen the Legislature includes a particular word in one portion of a statute and omits it from another portion of that statute, such omission is presumed to be intentional." (internal quotation marks and citation omitted)). We therefore decline to read this requirement into Section 66-5-301 or

---

[4]We limit our analysis in the *Varela-Burciaga* case to the particular issue addressed by the district court and the parties.

13.12.3.9 NMAC. *See High Ridge Hinkle Joint Venture v. City of Albuquerque*, 1998-NMSC-050, ¶ 5, 126 N.M. 413, 970 P.2d 599 ("The court will not read into a statute or ordinance language which is not there, particularly if it makes sense as written." (internal quotation marks and citation omitted)).

**{23}** To the extent Varela-Burciaga argues that, in the absence of a Spanish-language form, she was not afforded a fair opportunity to reconsider her rejection, this argument does not persuade us to infer a statutory requirement that is not there. *See Dominguez v. Dairyland Ins. Co.*, 1997-NMCA-065, ¶ 8, 123 N.M. 448, 942 P.2d 191 ("Although the uninsured motorist statute is remedial and the statute should be liberally interpreted to further its objectives, a policy of liberal interpretation, absent a clear statutory provision to the contrary, may not negate reasonable and unambiguous policy limitations.").

**{24}** Accordingly, the district court did not err in concluding that State Farm was not required to provide Varela-Burciaga Spanish-language UM/UIM selection/rejection forms and granting summary judgment in favor of State Farm. Having so concluded, we do not reach Varela-Burciaga's additional arguments related to stacking.

**CONCLUSION**

**{25}** In *Contreras v. Fred Loya Insurance Co.*, we reverse the district court's grant of summary judgment on Contreras's declaratory judgment and breach of contract claims. We additionally vacate the district court's grant of summary judgment on Contreras's remaining claims. We affirm in *Varela-Burciaga v. State Farm Mutual Automobile Insurance Co.*

**{26} IT IS SO ORDERED.**

**KRISTINA BOGARDUS, Judge**

**WE CONCUR:**

**J. MILES HANISEE, Chief Judge**

**JENNIFER L. ATTREP, Judge**